```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
NATAN DVIR,                                                    :
                                   Plaintiff,                  :
                                                               :          18-CV-9416(VEC)
                  -against-                                    :
                                                               :              ORDER
                                                               :
DANCING ASTRONAUT, INC.,                                       :
                                                               :
                                   Defendant.                  :
-------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/22/2019

VALERIE CAPRONI, District Judge:

On April 29, 2019, this Court issued an order directing counsel for Plaintiff, Richard Liebowitz, Esq., to show cause why sanctions should not be imposed on him for failing to comply with this Court's order directing him to submit a revised proposed default judgment by April 24, 2019. *See* Dkt. 25. Mr. Liebowitz responded to the Court's order with an affirmation and memorandum. *See* Dkts. 29-30. Having considered these submissions, the Court finds that Mr. Liebowitz failed to comply with this Court's order—communicated to him in-person, face-to-face, by the undersigned—by failing to submit any revised proposed default judgment at all, let alone one by the April 24, 2019 deadline. Therefore, as authorized by Fed. R. Civ. P. 16(f)(1)(C), the Court orders Mr. Liebowitz to pay a civil sanction to the Clerk of Court of $500. The Court suspends imposition of that sanction, however, for eighteen months from the date of this order. If Mr. Liebowitz fully and timely complies with all orders issued by the undersigned during that time, the Court will dismiss the sanction.

**I.   Factual Background**

On March 15, 2019, after the Clerk of Court issued a certificate of default against Defendant, *see* Dkt. 15, the Court issued an order directing Defendant to appear at a hearing on

April 19, 2019 and show cause why a default judgment should not issue against it, *see* Dkt. 20. Mr. Liebowitz appeared for Plaintiff at the show-cause hearing; Defendant made no appearance. *See* Dkt. 24 (Default J.) ¶ 5.

At the hearing, the Court heard from Plaintiff regarding the appropriate amount of statutory damages and attorneys' fees. *See* Dkt. 24 (Default J.) ¶ 6. Plaintiff declined to provide any information regarding past licensing of the photograph at issue. In an effort to fix "the amount of damages with reasonable certainty," *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999), but given no evidence from Plaintiff, the Court estimated that a maximum license fee of $1000 would have been appropriate for Plaintiff's photograph and determined that treble damages would adequately deter future infringement by this Defendant. *Id.* The Court also heard from Plaintiff regarding Mr. Liebowitz's request for $2975.00 in attorneys' fees. *Id.* ¶ 7. It first refused Mr. Liebowitz's request that his time be compensated at $450 per hour, an outlandish figure given that he was admitted to the New York bar only in August 2015 and the cookie-cutter nature of this litigation.[1] *Id.* The Court also explained why it was reducing Mr. Liebowitz's requests, among others, that he be paid for (a) 2.5 hours he purportedly spent reviewing the case file, conducting due diligence regarding the photograph's

---

[1] It did not aid Mr. Liebowitz's request for $450/hour that he (a) purportedly could not remember the year he was admitted to the bar; (b) did not submit materials documenting his request for $480 in costs; and (c) did not bring a pen to the hearing. *See* App. A. (hr'g tr.) at 5-6 ("THE COURT: . . . You've asked me for almost three thousand dollars in attorneys fees. Your request is grossly inflated. You've only been an attorney about three years; is that correct? When did you get sworn-in? MR. LIEBOWITZ: 2015. THE COURT: That's when you graduated from law school. When did you get sworn into the bar? MR. LIEBOWITZ: Well, it was October 2015. THE COURT: When did you take the bar? MR. LIEBOWITZ: I took it in August—trying to remember the exact date. It's either three or four years. THE COURT: Mr. Leibowitz, the notion that you do not know the year that you were sworn-in the bar [beggars] belief. But be that as it may, you've been a lawyer less than four years. You are requesting an hour hourly rate of $450 an hour which is laughable. I will give you as a lawyer with well less than five years in practice, two hundred an hour."), 7 ("THE COURT: Three thousand in statutory damages, total attorneys fees of $355[], costs of $480 and I'm not retaining jurisdiction. I would also suggest you bring a pen to court."), 7 ("THE COURT: . . . I shouldn't have to do all of this. You think you're worth $450 an hour but yet you're imposing a lot of burden on the Court to go through your filings. Go through what you need to submit and submit them. You need to resubmit your proposed judgment to reflect these amounts.").

copyright registration, and modifying and filing a cookie-cutter Complaint that he has used, it appears, in virtually every other one of the hundreds of similar cases he has filed in this district, and (b) 3.5 hours for "[d]raft[ing] and research[ing] application for default judgment, including attorney declaration," a request that, the Court's default judgment noted, was of dubious accuracy given that Plaintiff's default-judgment submissions were virtually identical to those that Mr. Liebowitz's associate filed in November and December 2018 in another, virtually identical case before another judge of this district. *Id.*; *see also* App. A. (hr'g tr.) at 6-7 ("THE COURT: . . . [I]f not fraudulent, it's close to that. You indicate that it took you three and a half hours to work on drafting and researching the default judgment. This default judgment is virtually identical to every other default judgment you've done. It is largely word-for-word from the default judgment in Hirsch v. The Dishh. . . . I should eliminate it entirely because it seems it is not an accurate reflection but instead, I am going to reduce it to three quarters of a[n] hour, which is about how long it should have taken you to work off the prior—and get it set for this case.").

At the end of the conference, the Court ordered Mr. Liebowitz, in no uncertain terms, to submit a revised proposed default judgment reflecting the Court's adjustments and to do so no later than April 24, 2019. Mr. Liebowitz confirmed that he understood the Court's instructions. *See* App. A (hr'g tr.) at 7 ("THE COURT: . . . You need to resubmit your proposed judgment to reflect these amounts. Do you understand the amounts? MR. LIEBOWITZ: Yes. THE COURT: . . . Resubmit the proposed judgment by April the 24th. MR. LIEBOWITZ: Thank you very much.").

April 24, 2019 came and went, but Mr. Liebowitz never submitted a revised proposed default judgment. On April 29, 2019, the Court itself revised Plaintiff's proposed default judgment to reflect the adjustments it had articulated at the show-cause hearing and filed the

judgment. *See* Dkt. 24. It simultaneously issued an order directing Mr. Liebowitz to show cause why he should not be sanctioned under Fed. R. Civ. P. 16(f), 28 U.S.C. § 1927, or the inherent powers of the Court for violating the Court's order directing him to submit a revised proposed default judgment. *See* Dkt. 25. Mr. Liebowitz's memorandum of law in response to the Court's order, *see* Dkt. 29, addressed whether sanctions under Section 1927 or this Court's inherent powers are appropriate but did not address the appropriateness of sanctions under Rule 16(f).

## II. Analysis

Federal Rule of Civil Procedure 16(f)(1)(C) allows a district court, on its own motion, to sanction an attorney who "fails to obey a scheduling or other pretrial order." The Rule's "'explicit reference to sanctions' reflects the Rule's intention to 'encourage forceful judicial management'" and "vests a district court with 'discretion to impose whichever sanction it feels is appropriate under the circumstances.'" *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018) (quoting Advisory Committee's notes to 1983 amendment of Fed R. Civ. P. 16(f)). "In deciding whether a sanction is merited, the court need not find that the party acted in bad faith. The fact that a pretrial order was violated is sufficient to allow some sanction." *Id.* (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1531 (3d ed. 2010)).

The Court finds that a sanction under Rule 16(f)(1)(C) for Mr. Liebowitz's violation is appropriate. Compliance with the Court's order was neither onerous nor complicated—indeed, like most of the single-image copyright litigation that has become Mr. Liebowitz's métier, preparing a revised proposed default judgment should have been mere plug-and-chug. And Mr. Liebowitz's submissions in response to the Court's show-cause order neither excuse his noncompliance nor justify leniency. Mr. Liebowitz first asserts that "there is absolutely no record evidence showing that [he] abstained from filing the Revised Document to delay adjudication of the proceeding" or "to harass Defendant." Dkt. 29 at 4. Setting aside the fact

that court orders, by definition, do not permit an attorney to "abstain" from compliance, it is precisely the kind of "abstention" exhibited by Mr. Liebowitz that Rule 16(f)(1)(C) is designed to prevent. *See* Fed. R. Civ. P. 16(f), Advisory Committee Notes to 1983 Amendment ("Rule 16(f) expressly provides for imposing sanctions on disobedient or recalcitrant . . . attorneys . . . ."). Mr. Liebowitz also says (somewhat contradictorily, in light of his "abstention" comment) that his "failure to file [a revised proposed default judgment] was inadvertent and a result of administrative oversight." Dkt. 30 ¶ 4. A Rule 16(f)(1)(C) sanction, however, does not require intent to violate a court order; negligence is enough. *See Huebner*, 897 F.3d at 53. Next, Mr. Liebowitz says that he did "not recall whether the Court fixed a deadline by which to file such revised document"—a condition caused, perhaps, by his failure to bring a pen to the show-cause hearing—and that "there is no deadline indicated on ECF." Dkt. 30 ¶ 3. He then suggests that "[b]ecause no deadline was set by the Court, then no sanctions should issue as there was no technical violation of the Court's Order." *Id.* The Court did, of course, set a deadline, and it communicated it to Mr. Liebowitz in-person. *See* App. A (hr'g tr.) at 7 ("THE COURT: . . . You need to resubmit your proposed judgment to reflect these amounts. Do you understand the amounts? MR. LIEBOWITZ: Yes. THE COURT: . . . Resubmit the proposed judgment by April the 24th. MR. LIEBOWITZ: Thank you very much."). And more importantly, neither Mr. Liebowitz's failure to write down the Court's deadline nor the absence of an ECF notation excuses compliance with the order. Finally, Mr. Liebowitz argues that because "it was in [his] own personal interest to obtain the default judgment as soon as possible, there is no conceivable argument that [he] sought to delay the adjudication of [his] own client's default proceeding." Dkt. 30 ¶ 5. This may be true, as far as it goes, but a Rule 16(f)(1)(C) sanction does not require "that the party acted in bad faith," *Huebner*, 897 F.3d at 53, and the fact that Mr. Liebowitz was

aware of his client's interest in acquiring a default judgment yet inexplicably missed a Court-ordered deadline for doing so does not make a sanction any less warranted.[2]

Because the Court is imposing a $500 sanction only because it hopes to deter Mr. Liebowitz's future noncompliance with its orders, the Court will suspend imposition of the sanction for eighteen months commencing from the date of this order.  If Mr. Liebowitz fully and timely complies with *all* of the undersigned's orders during that time (and with no reminders from Chambers' staff), this order will be dismissed.  Further violations, on the other hand, will result in this sanction becoming immediately payable, in addition to any other sanction that may be imposed for future violations of this Court's orders.

**SO ORDERED.**

**Date:  May 21, 2019**                                                                  **VALERIE CAPRONI**
**New York, New York**                                                       **United States District Judge**

---

[2] Because it imposes this sanction under Rule 16(f), the Court does not address Mr. Liebowitz's argument that sanctions ought not be imposed under 28 U.S.C. § 1927 or the inherent powers of this Court.  *See* Dkt. 29 at 2-4.

# Appendix A

```
      J4JAADVIC                        Conference

 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    NATAN DVIR,

 4                    Plaintiff,

 5             v.                              18 CV 9416 (VEC)

 6    DANCING ASTRONAUT, INC.,

 7                    Defendant.

 8    ------------------------------x
                                               New York, N.Y.
 9                                             April 19, 2019
                                               10:20 a.m.
10
      Before:
11
                         HON. VALERIE E. CAPRONI,
12
                                               District Judge
13
                                  APPEARANCES
14
      LIEBOWITZ LAW FIRM, PLLC
15         Attorney for Plaintiff Dvir
      BY:  RICHARD LIEBOWITZ
16

17

18

19

20

21

22

23

24

25
```

1                 (Case called)
2                 MR. LIEBOWITZ:  Richard Leibowitz, counsel for
3      plaintiff.
4                 Good morning, your Honor.
5                 THE COURT:  Good morning, Mr. Liebowitz.
6                 I see you've resolved whatever conflict you had on
7      venue.
8                 MR. LIEBOWITZ:  Yes.
9                 THE COURT:  You are seeking $30,000 in statutory
10     damages.
11                MR. LIEBOWITZ:  Yes.
12                THE COURT:  $2,957 in attorney as fees and $480 in
13     costs.  So, statutory damages can range from 750 to 30,000 --
14                MR. LIEBOWITZ:  Up to 150,000.
15                THE COURT:  OK.  Fine.  You've elected to get
16     statutory damages versus actual?
17                MR. LIEBOWITZ:  Yes.
18                THE COURT:  You have declined to provide me any
19     information on prior licensing of the picture; is that correct?
20                MR. LIEBOWITZ:  Yes.  OK.  So, without actual damages
21     it's sort of hard to peg what's appropriate statutory damages.
22     Applying the factors from Fitzgerald Publishing v. Bailor, 807
23     F.2d 1110, Second Circuit 1986.  I agree that the infringement
24     was willful.  I have no idea what costs the defendant awarded
25     because you have declined to provide the licensing information.

1  I have no idea of what income the plaintiff lost because the
2  plaintiff has declined to give license information.  I agree
3  that the award needs to be high enough to set an example and to
4  deter infringement.  The infringer defaulted.  So, he didn't
5  cooperate.  And I can find that he has a bad attitude towards
6  copyright compliance.
7          So, I'm inclined to give you statutory damages of
8  $3,000.  I am estimating your actual damages at thousand and
9  giving you treble damages.
10         Do you want to be heard on that?
11         MR. LIEBOWITZ:  Yes.
12         THE COURT:  OK.
13         MR. LIEBOWITZ:  I don't think that's enough
14 deterrence, frankly.
15         THE COURT:  Why not?
16         MR. LIEBOWITZ:  Because then everyone would just
17 default and just have to pay $3,000 and not defend themselves.
18         THE COURT:  So.
19         MR. LIEBOWITZ:  I think that if it was $30,000 then
20 people would hire a lawyer and defend themselves.  If not,
21 everyone in the whole country with just infringe and say, OK,
22 I'll just pay $3,000 later.
23         THE COURT:  We'll, that's three times what they would
24 have to pay in order to license the picture.  Generously, I am
25 betting that the picture is never going to license or license

1  for a very nominal amount and that's why the plaintiff is
2  declining to tell me his license history. This is three times
3  a $1000 license fee which I am confident is not what the
4  picture garnered.
5          MR. LIEBOWITZ: Well, we think this is a willful
6  infringement. First off --
7          THE COURT: So, that's three times. In antitrust that
8  is viewed as to how we deter antitrust violation is by treble
9  damages.
10         MR. LIEBOWITZ: Yeah, well, willful infringement in
11 this circuit I've seen much more multipliers of it. At least
12 for a willful infringement at least five. But in this
13 particular case -- that's if they defend themselves. I think
14 that 30,000 plus attorneys fees would put defendants on notice
15 to say, hey, we have to take this seriously. We can't default.
16         THE COURT: I've heard enough. You get three thousand
17 in damages.
18         You've asked me to retain jurisdiction. Why should I
19 do that?
20         MR. LIEBOWITZ: Retain jurisdiction? Because just in
21 case if they appear if --
22         THE COURT: There is going to be a judgment entered.
23 The only thing that's left is collecting the judgment. Why
24 should I do that versus state court?
25         MR. LIEBOWITZ: Well, we think that this is the

1    appropriate venue.
2             THE COURT:  Why?
3             MR. LIEBOWITZ:  Because it is a copyright infringement
4    case.
5             THE COURT:  This is just a collection effort.  After
6    the judgment is entered it is simply an exercise in collecting
7    the judgment.  That is a classic state court dispute between
8    you and Dancing Astronaut.
9             MR. LIEBOWITZ:  OK.
10            THE COURT:  OK.  So, I'm not to going to retain
11   jurisdiction.
12            You've asked me for almost three thousand dollars in
13   attorneys fees.  Your request is grossly inflated.  You've only
14   been an attorney about three years; is that correct?  When did
15   you get sworn-in?
16            MR. LIEBOWITZ:  2015.
17            THE COURT:  That's when you graduated from law school.
18   When did you get sworn into the bar?
19            MR. LIEBOWITZ:  Well, it was October 2015.
20            THE COURT:  When did you take the bar?
21            MR. LIEBOWITZ:  I took it in August -- trying to
22   remember the exact date.  It's either three or four years.
23            THE COURT:  Mr. Leibowitz, the notion that you do not
24   know the year that you were sworn-in the bar buggers belief.
25   But be that as it may, you've been a lawyer less than four

1   years.  You are requesting an hour hourly rate of $450 an hour

2   which is laughable.  I will give you as a lawyer with well less

3   than five years in practice, two hundred an hour.

4            On October the 15th you've indicated that it took two

5   and a half hours to draft the complaint and to do whatever

6   research that you did.  That is a grossly inflated amount for

7   what is a cookie cutter complaint.  I have had many of your

8   cases.  The complaint in this case is almost identical to all

9   of those complaints.  I will give you one hour for getting the

10  complaint together.

11           On October 16 you say that you spent a half an hour

12  processing the summons and the complaint.  That is a paralegal

13  task.  I will give you $90 an hour for that and it could have

14  been done in 15 minutes.  So, that's $22.50.

15           On February 16 you indicated that you requested entry

16  of a default judgment.  That again, if a paralegal task.  It

17  could have been done not in half an hour but in a quarter of a

18  hour.  It's $90 an hour.  Quarter of an hour is $22,50.

19           Then in what is it if not fraudulent, it's close to

20  that.  You indicate that it took you three and a half hours to

21  work on drafting and researching the default judgment.  This

22  default judgment is virtually identical to every other default

23  judgment you've done.  It is largely word-for-word from the

24  default judgment in Hirsch v. The Dishh.  That's D-i-s-h-h, 18

25  CR 979.  I should eliminate it entirely because it seems it is

1  not an accurate reflection but instead, I am going to reduce it
2  to three quarters of a hour, which is about how long it should
3  have taken you to work off the prior -- and get it set for this
4  case.  At the hourly rate that I've given you which is $200 an
5  hour, that's a total of $150.  All of that adds up to $355 in
6  fees.
7           Your costs were not supported by receipts but your
8  request is reasonable.  So, I am going to give the 480.  But
9  I'm telling you if you come before back me on default, you
10 don't give the receipts, I am not going to give you your costs.
11 I shouldn't have to do all of this.  You think you're worth
12 $450 an hour but yet you're imposing a lot of burden on the
13 Court to go through your filings.  Go through what you need to
14 submit and submit them.  You need to resubmit your proposed
15 judgment to reflect these amounts.
16          Do you understand the amounts?
17          MR. LIEBOWITZ:  Yes.
18          THE COURT:  Three thousand in statutory damages, total
19 attorneys fees of $3555, costs of $480 and I'm not retaining
20 jurisdiction.
21          I would also suggest you bring a pen to court.
22          MR. LIEBOWITZ:  Yeah.  That was my fault.
23          THE COURT:  Anything further?
24          MR. LIEBOWITZ:  That's it.
25          THE COURT:  OK.  Resubmit the proposed judgment by

J4JAADVIC                          Conference

1  April the 24th.
2          MR. LIEBOWITZ:  Thank you very much.
3          (Adjourned)